UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBERTY MUTUAL INSURANCE
COMPANY, etc.,

     Plaintiff,

v.                    CASE NO.  8:00-CV-1971-T-17EAJ

PRECISIONAIRE, INC.,
etc., et al.,

     Defendants.

_____/

ORDER

This cause is before the Court on:

Dkt. 78 Motion for Partial Summary Judgment
Dkt. 80 Exhibits
Dkt. 92 Response
Dkt. 104 Reply
Dkt. 120 Affidavit

This case is a breach of contract case based on diversity
jurisdiction. Plaintiff seeks the entry of partial summary
judgment on Count I on the issue of liability. Plaintiff issued
a worker's compensation and employer's liability policy to
Defendants. In addition, the parties entered into a Guarantee
Agreement, an Indemnification Agreement, and a Cross-
Collateralization Agreement.

Defendants/Counterplaintiffs have filed a Counterclaim which
alleges that Plaintiff/Counterdefendant breached the duty to act
in good faith, to act reasonably and in the best interest of the
insureds, and breached contractual obligations to
Counterplaintiffs.

Case No. 8:00-CV-1971-T-17EAJ

The Court conducted oral argument on the Motion.   The
parties have mediated this dispute on several occasions, but were
unable to resolve it.

I.   Standard of Review

This circuit clearly holds that summary judgment should only
be entered when the moving party has sustained its burden of
showing the absence of a genuine issue as to any material fact
when all the evidence is viewed in the light most favorable to
the nonmoving party.   Sweat v. The Miller Brewing Co., 708 F.2d
655 (11th Cir. 1983).   All doubt as to the existence of a genuine
issue of material fact must be resolved against the moving party.
Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 996-
7 (5th Cir. 1979), quoting Gross v. Southern Railroad Co., 414
F.2d 292 (5th 1969).   Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in Celotex v.
Catrett, 477 U.S. 317 (1986):

> In our view the plain language of Rule 56 c
> mandates the entry of summary judgment, after
> adequate time for discovery and upon motion,
> against a party who fails to establish the
> existence of an element essential to that
> party's case, on which that party will bear
> the burden of proof at trial.   Id at 273.

The Court also said, "Rule 56(e) therefore requires the
nonmoving party to go beyond the pleadings and by her own
affidavits, or by the 'depositions, answers to interrogatories,
ad admissions on file,' designate 'specific facts showing there
is a genuine issue for trial.'" Celotex Corp. At p. 274.

Case No. 8:00-CV-1971-T-17EAJ

II.  Plaintiff's Motion

Plaintiff complains that Defendants breached their
obligations under the contracts by failure to pay the premium for
the worker's compensation coverage, despite demands for payment,
in the amount of $134,022, and failure to provide additional
security in the amount of $300,000.  Plaintiff states that it
continues to make payments on claims that arose during the
applicable policy period, and to incur expenses associated with
those claims.


III.  Defendants' Response

Defendants argue that there are factual disputes which
preclude the entry of summary judgment. Defendants argue that
they did pay the premiums, and did supply a $700,000 Letter of
Credit which Liberty Mutual unconscionably wasted.  Defendants
argue that the record contains many instances of claims
mishandling, including benefit overpayments, miscalculations,
lack of investigation, and sloppy defense.  Defendants hired a
professional insurance claims investigator, who has confirmed
Plaintiff's alleged breach of its duties to Defendants.
Defendants have filed a Counterclaim based on claims mishandling.


IV.  Reply

In the Reply, Plaintiff argues that all of the contracts
together establish Plaintiff's total discretion to advance costs
and settle claims.


3

Case No. 8:00-CV-1971-T-17EAJ

V.  Discussion

        The dispute in this case is based on a worker's compensation
policy issued by Plaintiff to Defendants.  Worker's compensation
laws provide employees limited medical and wage loss benefits,
without regard to fault, for losses resulting from accidental
workplace injuries in exchange for the employee relinquishing his
or her right to seek common law recovery from the employer for
those injuries....[T]he system is designed for employers and
insurance carriers to assume responsibility for limited amounts
of medical and wage loss benefits resulting from workplace
injuries without regard to fault in exchange for limitations on
their liability, while the employee would correspondingly receive
quick and efficient delivery of limited wage loss compensation
and medical benefits.  See Aguilera v. Inservices, Inc., 905
So.2d 84 (Fla. 2005).  Employers are protected from negligent
workplace conduct which produces workplace injury, but are not
protected from intentional torts.  The Florida Worker's
Compensation statute also immunizes insurance carriers for
negligent conduct, simple bad faith and minor delays in payment,
but does not protect insurance carriers from intentional tortious
conduct which causes injuries to claimants.  The ultimate intent
of the statute is to assure the quick and efficient delivery of
disability and medical benefits to the injured worker and to
facilitate the worker's return to gainful employment.  The
statute includes various mechanisms to insure that appropriate
payments are timely made, and provides an array of sanctions when
a carrier wrongfully withholds payment.

4

Case No. 8:00-CV-1971-T-17EAJ

Worker's compensation claims require an initial decision as
to compensability and subsequent decisions to pay medical and
wage loss benefits.  In general, worker's compensation claims are
initiated when an injured worker reports an accident to his
employer, and the employer notifies his insurance carrier by
filing a report of the injury.  Once the carrier has been
notified of the injury, the statute sets a time limit for the
carrier to makes its decision as to compensability.  If an injury
is accepted as compensable, then the carrier is required to
provide certain medical and wage loss benefits.  The carrier
routinely takes a statement from the claimant as to the reported
injury, collects medical and wage information directly from the
claimant, and arranges for medical evaluations to document the
reported injury.  The carrier's access to medical information is
a crucial aspect of the self-executing worker's compensation law.
The carrier accumulates documentation of the worker's medical
treatment during the claim, and makes its decisions to provide
benefits based on the findings of the worker's treating
physician.   An injured worker is provided with medical care and
wage loss benefits until he reaches the point of maximum medical
improvement and is medically cleared to return to gainful
employment.

The Court has included this discussion to emphasize that: 1)
the actions of the employer and carrier are controlled by the
requirements of the Florida Worker's Compensation statute; and 2)
that there is a well-developed body of customs, practices and
policies associated with the administration of worker's
compensation claims.  While the express terms of a contract
embody the parties' reasonable expectations in entering into a
contract, the Court expects that knowledge of industry practices

5

Case No. 8:00-CV-1971-T-17EAJ

for Florida Worker's compensation claims comprised part of the reasonable expectations of the parties in entering into the subject contracts.  Under the Florida Worker's Compensation statute, the obligations and duties of the employer and carrier are regarded as inseparable to the extent necessary to carry out the purpose of the law.  See Florida Erection Services, Inc. V. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981).

A.  The Insurance Policy

The insurance policy at issue is a "large deductible" policy.  Plaintiff was responsible for making payments under the policy to injured workers for medical care and indemnity payments.  Based on written agreements, Plaintiff was to seek reimbursement from Defendants for the benefits paid, up to a certain limit ($250,000 per claim and $1,000,000 for all claims), during the policy period.

Plaintiff was also to seek reimbursement from Defendants for Allocated Loss Adjustment Expenses, which include attorney's fees, investigator fees, and all other expenses associated with the handling, settling and defense of claims, as defined in the policy.  This reimbursement amount had no set limit; all "ALAE" expenses were to be reimbursed.  Pursuant to the written agreements, Defendants were not to reimburse Plaintiff for penalties, fines, assessment or fees imposed by Plaintiff due to Plaintiff's errors in handling a claim.

6

Case No. 8:00-CV-1971-T-17EAJ

In a guaranteed cost policy, a fixed premium is paid in
advance in exchange for which the insurance company accepts the
burden of all payments and all expenses for all claims made
during the policy period.  In a "large deductible policy" a
minimal payment is made in advance for the premium.  The insured
will still be required to pay the insurance company for
expenditures which occur after the policy period is over.

The subject insurance policy was cancelled in March, 2000.
Plaintiff continues to incur payment obligations and expenses in
connection with open claims made before the expiration of the
policy.

The Court notes that both parties are sophisticated
commercial entities.  While insurance policies are adhesion
contracts, both parties had the assistance of counsel in the
transaction.  The premium structure of the subject policy was
agreed upon by the parties.  The purpose of the worker's
compensation policy and employer's liability policy was to
protect Defendants from the risk of worker's compensation
liability and tort liability.  A "large deductible" policy was
chosen to keep Defendants' premium costs low while affording a
level of protection against liability.

1.  Choice of Law

The insurance policy does not specify what state law
controls.  Plaintiff argues that the Court should apply
Massachusetts substantive law to this case.  Plaintiff argues
that under Florida's conflict of law rules, the doctrine of <u>lex
loci</u> <u>contractus</u> directs that, in the absence of a contractual

7

Case No. 8:00-CV-1971-T-17EAJ

provision specifying governing law, a contract, other than one
for performance of services, is governed by the law of the state
where the contract is made.  Massachusetts is the place where the
last act to the complete the contracts took place.  In the
alternative, Plaintiff argues that the Court should apply the
substantive law of Florida, because a federal court sitting in
diversity applies state substantive law.  Defendants argue that
both Massachusetts and Florida law recognize the duty to act in
good faith.

In exercising a choice of law the first step is to ascertain
the nature of the problem involved, the second step is to
determine what choice of law rule the [forum state] applies to
that type of legal issue, and the third step is to apply the
proper choice of law rule to the fact and thereby conclude which
state's substantive law applies.  See Acme Operating Co. v.
Kuperstock, 711 F.2d 1538, 1540 (11th Cir. 1983).  "[D]ifferent
substantive issues in a single case may have to be resolved under
the laws of different states where the choices influencing the
decisions differ."  See Shapiro v. Associated International
Insurance Co., 899 F.2d 1116, 1119 (11th Cir. 1990).

The subject insurance policy was executed in Boston,
Massachusetts to cover a group of companies located in
California, Florida, Illinois, North Carolina, Texas and Utah.
Flanders Corporation, c/o Precisionaire, is the first named
insured, and is located in St. Petersburg, Florida.  The term of
the policy is from 5/1/1999 to 5/1/2000. (Dkt. 80, Exh. A, A-1
(Deductible Endorsement)).

8

Case No. 8:00-CV-1971-T-17EAJ

The subject policy is a worker's compensation and employer's liability policy covering a number of companies located in various states.  After consideration, the Court finds that Florida Supreme Court would not apply <u>lex loci contractus</u>.  The migration rationale does not apply to the fact situation present in this case.  <u>See</u> <u>Shapiro v. Associated International Insurance Co.</u>, 899 F.2d 1116 (11th Cir. 1990).

The validity of, and rights under, the subject insurance policy are determined by the law of the state which the parties understood to be the principal location of the insured risk, unless some other state has a more significant relationship with this transaction and the parties.  <u>Section 193</u>, <u>Restatement (Second) of Conflicts of Law</u>.  Based on the relevant criteria of Section 6 of the Restatement, Florida has the most significant relationship with the transaction and the parties.  The principal risk was located in Florida, and was contemplated to remain unchanged.  Florida regulates its worker's compensation system through statute.  Therefore, the Court will apply substantive Florida law.

2.  The Policy Provisions

In Part One, the policy describes how the insurance applies, and what Plaintiff will pay, and states the duty to defend.  Paragraph H(3) states that Plaintiff is directly and primarily liable to any person entitled to benefits payable by this insurance, and any such person may enforce Plaintiff's duties.

9

Case No. 8:00-CV-1971-T-17EAJ

Part Four outlines the duties of the insured if an injury occurs.  This includes the duty to cooperate with Plaintiff and assist Plaintiff, as Plaintiff may request, in the investigation, settlement or defense of any claim or suit.

Part Five addresses premium payments.  Under Paragraph 5(d), the insured agrees to pay all premiums when due, and Paragraph 5(e) explains how the final premium will be calculated.  The policy states that the final premium will be determined after the policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy.

3.  The Deductible Endorsement

The deductible endorsement explains in detail how the deductible applies, and identifies conditions associated with the deductible, including: 1) Recovery from others; 2) Cancellation; 3) Duties of the Insured and 4) Other Rights and Duties (Insuror and Insured).

Paragraph A explains what payments the insured is required to pay as to each occurrence, and notifies the insured that Plaintiff will advance part or all of the applicable deductible to settle any claim proceeding or suit.  Under Paragraph A, the insured agrees to reimburse Plaintiff for any amount Plaintiff has advanced.

10

Case No. 8:00-CV-1971-T-17EAJ

Under Paragraph D(3), the named insured agrees to reimburse
Plaintiff for all deductible amounts, including all "allocated
loss adjustment expense" that Plaintiff has advanced.  Under
Paragraph D(2), Defendants are required to pay promptly all
amounts due under the deductible endorsement, or Plaintiff may
cancel the endorsement or the policy.

4.  General Principles

The construction and effect of a written contract of
insurance, including the determination and resolution of an
ambiguity, is a matter of law to be determined by the Court.
Insurance contracts are construed in accordance with the plain
language of the policies as bargained for by the parties.
Ambiguities are interpreted liberally in favor of the insured and
strictly against the insurer who prepared the policy.  Where
there is no ambiguity in the terms of an insurance contract, the
language must be enforced as written.

The Court is required to interpret an insurance policy in a
way that will effectuate the intentions of the parties at the
time the parties entered into the contract.  The Court must look
first to the language of the contract.  Terms within the policy
should be given their ordinary meaning, unless there is some
indication that the parties intended a special or technical
meaning.  Where the policy itself defines a term, the Court will
give the term is agreed upon meaning.  In seeking to determine
the intent of the parties, the Court should construe the
insurance policy as a whole.  Each provision must be read in
context with every other provision, and all of the provisions
must be considered in their entirety.  The Court will seek to

11

Case No. 8:00-CV-1971-T-17EAJ

give effect to every policy provision, and avoid a construction
that will give effect to one provision while rendering another
provision superfluous.

5.   Duty to Act in Good Faith

     Plaintiff has argued that under the plain language of the
insurance policy, Plaintiff is entitled to the entry of summary
judgment on liability as to Count I of the Complaint.  Plaintiff
argues that the policy language is plain, and no condition is
expressed that requires Plaintiff to obtain the insured's
approval before advancing payments to claimants for worker's
compensation benefits.  Essentially, Plaintiff is arguing that
there is a strict debtor/creditor relationship between Plaintiff
and Defendants, and Defendants are required to pay Plaintiff for
all amounts Plaintiff has advanced for claims and expenses, and
to pay for all premiums after notice.  Plaintiff relies on <u>Sharpe
v. Physicians Protective Trust</u>, 578 So.2d 806 (Fla. 1st DCA
1991), rev. den. 589 So.2d 292 (1991), and on <u>Shuster v. South
Broward Hospital District Physicians' Professional Liability
Trust</u>, 591 So.2d 174 (Fla. 1992).

     Defendants have responded that Plaintiff breached its duty
of care to Plaintiff, and material factual disputes preclude the
entry of summary judgment as to Count I.  Defendant relies on the
duty to act in good faith articulated in <u>Boston Old Colony
Insurance v. Gutierrez</u>, 386 So.2d 783, 785 (Fla. 1980).
Defendants have also argued that Plaintiff has breached a
fiduciary duty to Defendants based on the policy's large
deductible, under which Defendant is self-insured for each claim
up to $250,000.

12

Case No. 8:00-CV-1971-T-17EAJ

The Court has not found any case which holds that a large
deductible in an insurance policy creates a special duty of care.
The fiduciary duty of the liability insurer to its insured arises
from its performance of the duty to defend.   See Doe v. Allstate
Ins. Co., 653 So.2d 371, 373-74 (Fla. 1995).   The decision to
select a particular high deductible and pay a correspondingly
lower premium is a choice freely exercised by the contracting
parties, and reflects the parties' acceptance of risk in a
particular amount should a covered accident occur.   The Guarantee
Agreement specifically provides a dispute resolution mechanism as
to any deductible advances.   At this time the Court does not have
any information as to whether Defendants invoked the dispute
resolution process as to any particular claim.

Under Florida law, "the implied covenant of good faith
exists in virtually all contractual relationships."   See Sepe v.
City of Safety Harbor, 761 So.2d 1182, 1184 (Fla. 2nd DCA 2000).
The Court notes that the reach of the implied covenant of good
faith and fair dealing is not an independent term within the
parties' contract, and it cannot override an express contractual
provision.   See Ernie Haire Ford, Inc. v. Ford Motor Co., 260
F.3d 1285 (11th Cir. 2001).   It operates to attach to the
performance of a specific or express contractual provision.
Florida courts have also held that "[t]he implied obligation of
good faith cannot be used to vary the terms of an express
contract."   See City of Riviera Beach v. John's Towing, 691 So.2d
1162 (Fla. Dist.Ct.App. 1997).   The purpose of the implied
covenant of good faith is to protect the reasonable expectations
of the contracting parties in light of their express agreement.

13

Case No. 8:00-CV-1971-T-17EAJ

In this case, the implied covenant of good faith attaches to Plaintiff's performance of its duty to pay claims as required by Florida Worker's compensation law, and its duty to defend any such claim or suit, which includes the right to investigate and settle the claim or suit.  Defendants are contending that Plaintiff's failure to perform its duties to investigate and administer claims as required by Florida Worker's Compensation law constitutes a material breach of the insurance policy and excuses Defendants from Defendants' duty to pay the premium when due, and to reimburse Plaintiff for its claim expenses.

In <u>Boston Old Colony Insurance Company v. Gutierrez</u>, 386 So.2d 783 (Fla. 1980), the Florida Supreme Court discusses the definition of the duty of good faith:

> An insurer, handling the defense of claims
> against its insured, has a duty to use the
> same degree of care and diligence as a person
> of ordinary care and prudence should exercise
> in the management of his own business.
> (Citation omitted).  For when the insured has
> surrendered to the insurer all control over
> the handling of the claim, including all
> decisions with regard to litigation and
> settlement, then the insurer must assume a
> duty to exercise such control and make such
> decisions in good faith and with due regard
> to the interests of the insured. (Citation
> omitted).  This good faith duty obligates the
> insurer to advise the insured of settlement
> opportunities, to advise as to the probable
> outcome of the litigation, to warn of the
> possibility of an excess judgment, and to
> advise the insured of any steps he might take
> to avoid same. (Citation omitted).  The
> insurer must investigate the facts, give fair
> consideration to a settlement offer that is
> not unreasonable under the facts, and settle,
> if possible, where a reasonably prudent

14

Case No. 8:00-CV-1971-T-17EAJ

> person, faced with the prospect of paying the
> total recovery, would do so. (Citation
> omitted).  Because the duty of good faith
> involves diligence and care in the
> investigation and evaluation of the claim
> against the insured, negligence is relevant
> to the question of good faith. (Citation
> omitted).  The question of failure to act in
> good faith with due regard for the interests
> of the insured is for the jury. (Citation
> omitted).

The Court notes that Plaintiff has argued that the terms of
the insurance policy give Plaintiff the absolute discretion to
settle claims, and Defendants have no standing to object to
object to Plaintiff's claims handling because of the specific and
explicit terms of the insurance policy.  In response, Defendants
argue that the language in the insurance policy does not contain
the "as it deems expedient" language found in the insurance
policies at issue in Shuster, supra, and Sharpe, supra, and
Plaintiff is not insulated from Defendants' claims of bad faith.

The Court notes that, under Boston Old Colony, supra, where
an insurer takes on the duty to defend, the insured has
surrendered all control over the handling of the claim, including
litigation and settlement, and it is from that total control that
the duty of good faith arises.  Boston Old Colony relies on
Liberty Mutual v. Davis, 412 F.2d 475 (5th Cir. 1979)("[I]n
Florida the duty to settle in good faith arises out of the
contractual relationship of the insured and insurer as a result
of the insurer's exclusive control of all questions of liability,
settlement, of defense and management before and after trial").
In asserting a breach of the duty of good faith based on Boston
Old Colony, supra, Defendants are conceding that Plaintiff had

15

Case No. 8:00-CV-1971-T-17EAJ

absolute discretion as to handling of the worker's compensation claims in this case.

In <u>Shuster v. South Broward Hospital District Physicians' Professional Liability Insurance Trust</u>, 570 So.2d 1362 (4th DCA 1990), the Fourth District Court of Appeal held that an insured cannot maintain a common law action for bad faith against his insurer when the insurer settles the cause of action against the insured within the policy limits, exposing the insured to no excess liability, even though the insured claims that, as a result of the settlement, he is unable to obtain insurance. The Court found that the "right and duty to defend" clause found in the insurance policy was properly construed to provide a broad duty to defend and a discretionary duty to settle. The <u>Shuster</u> Court noted that the fiduciary aspect of the insurer/insured relationship is determined by the scope of the contractual undertaking. The Court said:

> Because the insured has conferred on the insurer by contract the complete obligation and authority to settle (and pay) claims in which the insured may be liable, it must exercise that authority so as to accomplish the very object of the delegation of the authority and to that end exercise good faith with due regard for the insured's interest to be free of monetary obligation as a result of the claim made. However, where the insurer acts within the authority and rights delegated to it in accomplishing the intended result under the contract, it cannot be liable to the insured for exercising its contract rights."

16

Case No. 8:00-CV-1971-T-17EAJ

The <u>Shuster</u> Court also found that where the language of the contract is clear and unambiguous, courts should give effect to its express written provisions, and the policy provision containing the "as it deems expedient" language could be read no other way than to give the insurer the exclusive right to settle.

In <u>Shuster v. South Broward Hospital District Physicians Professional Liability Insurance Trust</u>, 591 So.2d 174 (Fla. 1992), the Florida Supreme Court affirmed the decision of the Fourth District Court of Appeal, holding that, absent unusual circumstances, in cases in which the insurance contract provides that the insurer "make such investigation and such settlement of any claim or suit as it deems expedient," a cause of action for breach of good faith duty owing to the insured will not lie for failure to defend or investigate the claim when the insurer has settled the claim for an amount within the limits of the insurance policy. The Florida Supreme Court noted that an insurer's good faith discretion is broader when deciding to settle a claim within the policy limits than when refusing to settle or defend a claim.  <u>See</u> <u>Gardner v. Aetna Cas. & Sur. Co.</u>, 841 F.2d 82 (4th Cir. 1988).

The Florida Supreme Court found that the language of the policy was clear and the insured was put on notice that the agreement granted the insurer the exclusive authority to control settlement and to be guided by its own self-interest when settling the claim for amounts within the policy limits.  The Court declined to rewrite the policy when the insurer merely exercises its rights under the agreement.

17

Case No. 8:00-CV-1971-T-17EAJ

The Florida Supreme Court recognized that every contract requires good faith performance of its provisions, but the act of settling a claim either for nuisance value or for an amount lower than the actual value of the suit is not bad faith performance of the right to settle as one "deems expedient."

The Florida Supreme Court further recognized that the discretion granted by a "deems expedient" provision is not absolute, but is determined by the intent and expectations of the parties in entering into the agreement. Florida law requires that agreements must be interpreted in accordance with the intent of the parties at the time the agreement is executed, if that intent can be ascertained from the language. See James v. Gulf Life Ins. Co., 66 So.2d 62 (Fla. 1953). The Court noted that the "deemed expedient" language would not protect an insurer who indiscriminately settled with one or more parties for the full policy limits, thus exposing the insured to an excess judgment from the remaining parties. The Court also noted that the "deems expedient" language would not protect an insurer who acted in bad faith and without regard to the insured's interests by settling a claim in a manner that bars the insured's counterclaim.

Contract interpretation is a question of law for the Court. Questions of fact arise only when an ambiguous contract term forces the Court to turn to extrinsic evidence of the parties' intent, such as precontract negotiations, to interpret a disputed term. However, an ambiguity does not necessarily arise unless genuine uncertainty remains after applying ordinary rules of construction.

18

Case No. 8:00-CV-1971-T-17EAJ

After consideration, the Court concludes that the absence of
"as it deems expedient" language from the policy is not a
dispositive issue, and its absence does not render the "duty to
defend" clause ambiguous.  The duty to defend is distinct from
and broader than the duty to indemnify the insured against
damages assessed.  See Baron Oil Company v. Nationwide Mutual
Fire Insurance Company, 470 So.2d 810 (1st DCA 1985).  The duty
to defend a claim made against its insured is determined from the
allegations in the initial complaint, and if there is any doubt
regarding the duty to defend, the question must be resolved in
favor of the insured, requiring the insurer to defend, even if
the actual facts are inconsistent with the allegations of the
claim.  What this means is that, for every single claim
Defendants reported to Plaintiff as a worker's compensation
claim, the allegations contained in that particular claim
triggered the duty to defend the claim.   The broad duty to
defend necessarily includes the duty to investigate to determine
if the initial claim is in fact within the scope of coverage
provided by the insurance policy.  Once the duty to defend
arises, it continues throughout a case, unless the pleadings
establish that the claims giving rise to coverage have been
eliminated from the suit.  The inclusion of a contract provision
which specifies that the reciprocal duty of the employer is to
cooperate with and assist the carrier, as requested by the
carrier, in the investigation, settlement or defense of any claim
clarifies that it is the carrier who will control the defense of
any claim.

19

Case No. 8:00-CV-1971-T-17EAJ

The duty to indemnify is not as broad as the duty to defend.
The duty to indemnify is controlled by the actual facts of the
particular claim, not by the allegations of the claim.  The scope
of the coverage under the insurance policy is limited to those
benefits payable under the Florida Worker's compensation law.
The Court finds that there is no ambiguity in the provision
stating the duty to pay benefits.  The dispute is whether, as to
each particular claim, the actual facts of that claim establish
that it was a covered claim.

The express terms of a contract generally evidence the
reasonable expectations of the parties.  The provisions of the
insurance policy, as well as the provisions of the other
contracts, indicate that Plaintiff was vested with broad
contractual discretion to defend, investigate and settle claims.
However, Plaintiff was required to observe reasonable limits in
exercising that discretion, consistent with the parties' purpose
in contracting.  The Court will have to examine each particular
claim, and determine whether Plaintiff's performance of the duty
to pay and the duty to defend were exercised within reasonable
limits, given Plaintiff's broad discretion.  Discretionary
decisions will be evaluated based on the knowledge of decision-
maker at the time the decision was made, not based on hindsight
or second-guessing.  That is, as long as there is some basis in
fact and/or law for the discretionary decision, the Court will
accept the decision as reasonable.

After consideration, the Court finds that there are material
factual disputes as to each claim which preclude the entry of
summary judgment as to liability.

20

Case No. 8:00-CV-1971-T-17EAJ

6.  Specific Claims

     This case was filed in 2000.  The subject insurance policy
covers specific claims that arose under the policy.  In order to
determine whether a material breach occurred in 2000 which may
excuse Defendants' refusal to pay the premium and expenses that
Plaintiff alleges were due at that time, and to provide
additional security, the Court needs to determine as to each
specific claim whether the compensability decision was correct,
whether the amounts paid for worker's compensation benefits were
correct, whether settlement amounts were reasonable based on the
facts of the particular claim, and whether expenses were
appropriate.  In light of Plaintiff's continuing duty to defend,
the Court will also be required to evaluate Plaintiff's further
performance of its duties under the policy.

     If a trial of this case becomes necessary, the Court does
not contemplate devoting trial time to any issue that can be
resolved in advance.  It is very unfortunate that the parties
were unable to resolve this commercial dispute at mediation.
The Court is going to appoint a special master who has expertise
in Florida worker's compensation law to evaluate the parties'
submissions as to the compensability decision, and the benefits,
settlements and expenses paid, and to render an opinion on each
issue as to each claim.    The expense of the special master will
be borne equally by the parties.  The Court directs the parties
to confer and attempt to reach agreement on the person appointed.
If no agreement is reached, each party shall propose three
candidates, and the Court will decide.  Accordingly, it is

Case No. 8:00-CV-1971-T-17EAJ

ORDERED that the Motion for Partial Summary Judgment (Dkt. 78) is denied, and the parties shall file their information as to a special master within ten days.

DONE and ORDERED in Chambers, in Tampa, Florida on this 7th day of April, 2006.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record